IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Gina Murdock | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 09-CV-518-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
|        Defendant. | ) |

## ORDER AND OPINION

Plaintiff Gina Murdock requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Standard of Review

Plaintiff filed her application for disability insurance benefits and SSI on January 26, 2007, claiming an onset date of November 15, 2006. (R. 102). The relevant adjudication period is from November 16, 2006 to February 25, 2009. (R.15, 102). The ALJ conducted a hearing on December 23, 2008 to consider plaintiff's disability claim, and the ALJ denied the claim on February 25, 2009. (R. 22, 23). Following entry of his decision, the Appeals Council denied plaintiff's request for review. (R. 1). The decision of the Appeals Council represents the

Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On February 1, 2010, plaintiff filed the subject action with this Court.

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is to determine whether substantial evidence supports the decision and whether the applicable legal standards were correctly applied. *Briggs ex. rel. Briggs v.* Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health &Human Service*, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden a plaintiff must provide medical evidence of an impairment and the severity of her impairment during the relevant adjudicated period. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C. § 423(d)(3), and 20 C.F.R. §§ 404.1513, 416.913.

**Issues**

Plaintiff raises the following three issues on appeal:

(1) The ALJ erred in holding that the evidence did not support a finding that plaintiff's condition meets or equals Listing 1.02, which would establish per se disability.

(2) The ALJ erred by failing to properly consider the treating physician's opinion.

(3) The ALJ erred by failing to properly analyze plaintiff's credibility.

**Plaintiff's Background**

Plaintiff was born on January 1, 1968, and was 39 years old on her alleged onset date. (R. 27, 127). Plaintiff has a high school education and received training to become a Certified Medical Assistant ("CMA"). (R. 27). She has been married twice and currently resides with her second husband and their three minor children. (R. 133). She is 5 feet 4.5 inches tall, and weighs 294 pounds. (R. 69). From 2000 to 2007, plaintiff worked various jobs including: Department Manager at Wal-Mart, a caregiver at a nursing home, a customer service representative at a call center, a convenience store cashier, and a cafeteria worker. (R.170-177). Plaintiff has not been employed since January, 2007. (R. 170).

Plaintiff alleges that she has been disabled since November 15, 2006, and is unable to work due to problems with her knees, an inability to use her hands, depression, and obesity. (R. 37, 159). Plaintiff underwent knee surgery on July 18, 2004, after sustaining an injury while playing baseball. (R. 247). In August 2004, Gerald Shea, D.O., treating physician, noted that she had full range of motion in her knee and, by September, that she had minimal pain in her knee. (R. 247). On July 10, 2006, plaintiff visited Dr. Gregory Holt, M.D., an orthopedic specialist,

complaining of knee swelling and pain in her knees and arms. (R. 244). The specialist found several issues with her right knee and recommended surgery.[1] (R. 241). Plaintiff could not afford the surgery. (R. 249).

Plaintiff alleges that in March 2007, her regular activities included driving, vacuuming, cleaning the house, doing laundry, watching television, grocery shopping, handling her finances, and preparing sandwiches or microwave dinners for meals. (R. 212, 214-216). Plaintiff claims that these activities would take her a long time to accomplish[2] and that she needed frequent breaks when completing these tasks. (R. 212, 214). Plaintiff said that she was able to care for her personal needs but needed to sit while getting dressed. (R. 213). By August of 2007, plaintiff claims that her regular activities were limited to the laundry and sometimes making dinner. (R. 191). Plaintiff claims her daughter's assistance helped her with house cleaning, dishes, shaving her legs, and sometimes getting off the toilet. (R. 191, 192).

Plaintiff was examined by David Wiegman, M.D., at the request of the Commissioner on June 2, 2007. (R. 293). Dr. Wiegman found that her arm and leg strength were normal (although she did have pain when moving her lower right leg), her grip strength was normal, and her arm and leg motion was normal. (R. 294). Dr. Weigman found that plaintiff's right knee was slightly swollen, but she had a "symmetric and steady gait" of normal speed. (R. 295).

Thurma Fiegel, M.D., a state medical consultant, conducted a physical residual capacity assessment on June 8, 2007. (R. 314). Dr. Fiegel found that plaintiff could lift 10 pounds occasionally and less than ten pounds frequently. (R. 315). Dr. Fiegel found that plaintiff could stand or walk at least two hours in an eight hour day and sit for about six hours in an eight hour day. (R. 315). Dr. Fiegel found no other limitations. (R. 315-318).

---

[1] (R. 241) Dr. Holt's nurse reported that plaintiff had a medial meniscal tear, lateral meniscal tear, and a questionable anterior cruciate ligament strain in her right knee.
[2] Plaintiff claims she took one hour to vacuum, thirty minutes to make beds, and two hours to do laundry. (R. 214).

4

At the Commissioner's request, plaintiff was seen by Jerry Patton, D.O., on September 28, 2007. (R. 377). Dr. Patton found that plaintiff "walked in a safe and stable manner" and "used a minimal amount of limping." (R. 377). Dr. Patton added that plaintiff should be able to walk one to two blocks without difficulty and stated that "her biggest problem is that she is significantly overweight." (R. 377).

Gerald Shea, D.O., a treating physician at Pawhuska Indian Clinic, completed a Medical Source Opinion of Residual Functional Capacity on December 22, 2008. (R. 514). Dr. Shea stated that plaintiff can sit four to five hours, stand or walk two to three hours, and frequently lift less than ten pounds. (R. 514). Dr. Shea found that it was not medically necessary for plaintiff to elevate her legs, but that she would need to elevate them occasionally. (R. 514). Dr. Shea found that plaintiff needed the assistance of a walker for walking but not for standing. (R. 515).

Plaintiff appeared before the ALJ on December 23, 2008. (R. 23). Plaintiff testified that she had varicose veins, problems with her knees, numbness and pain in both her legs, and numbness in her hands. (R. 36, 37). She testified that she could not walk for very long distances without a walker and could only stand or walk for an hour at a time. (R. 37). Plaintiff described the medications she was taking[3] and her daily activities, such as doing the laundry and cooking microwave dinners. (R. 41).

The ALJ issued his final decision denying plaintiff disability benefits on February 25, 2009. (R. 12-22). The ALJ found that plaintiff suffered from degenerative joint disease of the knees, mild degenerative disc disease of lumbar spine, and obesity. (R. 14). The ALJ concluded that these impairments resulted in significant work related limitations, but fell short of equaling the criteria for a section listing. (R. 17). The ALJ also concluded that plaintiff had the residual functional capacity to perform sedentary work. (R. 17). The ALJ then found that plaintiff is

---

[3] (R. 54) : Lortab and Tramodol for pain.

capable of performing past relevant work as a customer service representative and that there are a sufficient number of jobs in the regional economy in that field. (R. 21). For these reasons, the ALJ found that plaintiff was not disabled from November 16, 2006, through the date of his decision (R. 22).

## Discussion

Plaintiff first challenges the ALJ's decision at step three of the five-step sequential process,[4] claiming that she did in fact meet or equal the criteria for listing 1.02 for a major dysfunction of a joint(s) due to any cause. 20 C.F.R. § 404(p) app. 1 (2010); (R. 14). A Section 1.02 listing requires a gross anatomical deformity, chronic pain, joint pain, and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s). 20 C.F.R. § 404(p) app. 1 (2010). In order to qualify for this listing a plaintiff must show these symptoms in addition to: (A) involvement of one major weight-bearing joint, resulting in the inability to ambulate effectively, or (B) involvement of one major peripheral joint in each upper extremity, resulting in the inability to perform fine and gross movements. Id.

Plaintiff alleges that the ALJ did not properly link his decision to specific evidence, stating that the ALJ "failed to explain why the plaintiff's knee condition did not meet or equal the Listing." (Dkt. # 21 at 6). Plaintiff cites Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) which held that "the ALJ was required to discuss the evidence and explain why he found that appellant was not disabled at step three." Plaintiff's reliance on Clifton is misplaced. In Clifton, the Tenth Circuit reversed the ALJ's decision because the ALJ "merely stated a

---

[4] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-752).

summary conclusion that appellant's impairments did not meet or equal any listed impairment." Id. at 1009. In fact, the ALJ did not "even identify the relevant Listings." Clifton, at 1009.

Here, on the other hand, the ALJ did discuss why he found plaintiff not disabled at step three. (R. 15-17). The ALJ identified Listings 1.02 and 1.04, and discussed in detail why plaintiff's condition did not meet or equal a relevant listing. (R.17). The ALJ correctly identified what a section 1.02 and 1.04 Listing require, explaining how plaintiff failed to satisfy these requirements. (R. 16-17). The ALJ discussed in much detail that the plaintiff's ability to walk a reasonable distance, at a good speed. (R. 19). In regards to the plaintiff's knee, which qualifies as a "weight-bearing joint" under Listing 1.02, the ALJ found that "[a] review of the entire record does not reveal any signs, symptoms or laboratory findings of an impairment which would impose more limitations on the claimant's ability to perform basic work." (R. 20). Regarding the section 1.04 Listing, plaintiff produced no evidence of nerve root impingement and straightening of the normal cervical lordosis, and obtained no diagnosis of spinal arachnoditis or diagnosis of lumbar spinal stenosis with pseudoclaudication resulting in preclusion of effective ambulation. (R. 15). The ALJ describes in detail why he found the plaintiff did not meet a relevant Listing, and also discussed how the plaintiff's depression did not qualify for a section 12.04 Listing.

Plaintiff also contends that the ALJ's finding that she needed a walker to ambulate for distances of greater than 100 feet, supported by Dr. Shea's opinion, constitutes a finding that the plaintiff meets or equals the requirements for Listing 1.02. (Dkt. 26 at 1-2). Plaintiff cites 20 C.F.R. § 404.1526(b)(3), which provides that "[i]f the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing." Plaintiff urges that even "if the plaintiff's condition does not meet Listing 1.02 it at least equals the medical significance of

7

that Listing." (Dkt. #21 at 7). Plaintiff states that she has dysfunction of both knees, chondronmaiacia, osteoarthritis, and meniscal tears, claiming that all of these impairments meet the physical requirements of a 1.02 Listing. Id. Plaintiff argues that the functional limitation of Listing 1.02 is met by her inability to walk more than one hundred feet unassisted. Id. Plaintiff also asserts that the ALJ did not properly consider the impact of plaintiff's obesity on her medical issues. Id.

The Court rejects plaintiff's contentions. The duty of the reviewing court is to determine if substantial evidence supports the ALJ's decision, meaning this Court cannot reweigh the evidence or substitute its decision for the ALJ's opinion. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Despite plaintiff's contentions, the ALJ did in fact take plaintiff's medical issues into account. The ALJ properly considered plaintiff's medical conditions and correctly concluded that plaintiff did not meet a listing. The ALJ examined Listings 1.02, 1.04, and 12.04 finding that the plaintiff did not meet or equal any of these. (R. 15-16). The ALJ discussed the functional limitation requirement of a 1.02 Listing which requires that a plaintiff be unable to ambulate effectively. 20 C.F.R. §. 404(p) app. 1 (2010). The ALJ noted that Dr. Wiegman found plaintiff possessed a normal range of motion in her legs, in her back, and her knee and ankle flexion were normal. (R. 18). The ALJ also noted Dr. Fiegel's findings showing that plaintiff could stand or walk for two hours of an eight hour day, and that the plaintiff possesses a steady gait allowing her two walk one or two blocks without difficulty. (R. 19). As for plaintiff's obesity, the ALJ did consider the effect that the condition had on plaintiff. Obesity may be found to be disabling at step three if there "is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 01-1p at *5. The ALJ cited the examination of plaintiff by Dr. Patton who concluded that despite plaintiff's obesity she was

able to walk with "a minimal amount of limping." (R. 19). The ALJ concluded that plaintiff was able to ambulate effectively despite her obesity. (R. 19-20). Thus, the ALJ's decision that plaintiff was not disabled at step three of the sequential evaluation process was supported by substantial evidence.

Plaintiff's next argument is that the ALJ failed to properly consider the opinion of Dr. Shea, her treating physician. (Dkt. # 21 at 8). This argument does not merit a reversal of the ALJ's decision. Plaintiff claims that Dr. Shea's opinion identifying her severe physical limitations was effectively ignored by the ALJ, who failed to address plaintiff's limitations while sitting, standing, and walking. Id. Plaintiff claims that the ALJ incorrectly determined that Dr. Shea did "not note any objective findings which would support those limitations" to plaintiff's upper extremities. (R. 20, Dkt. # 21 at 8).

Despite these contentions, the ALJ properly considered the opinion of Dr. Shea in light of all other existing evidence. The ALJ correctly found that the opinion of Dr. Shea as to the plaintiff's upper extremities was not supported by the weight of the evidence. There are several factors that a court must weigh in determining whether or not the treating physician's opinion is given controlling weight including; the length and frequency of examination, the nature and extent of the treatment relationship, the supportability of the physician's explanation, the consistency between the opinion and the evidence in record as a whole, whether the physician is a specialist in the controlling area, and other factors. 20 C.F.R. § 404.1527(d)(2-6); Goatcher v. Dep't of Health and Human Servs., 52 F.3d 288, 290 (10th Cir. 1995). In addition, "generally, we give more weight to the opinions from . . . treating sources", because of the unique ability of a treating physician to provide detail and perspective that "cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(d)(2). However, the treating physician's opinion

9

must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not be "inconsistent with the other substantial evidence to be given controlling weight." Id; Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).

Here, the ALJ articulated the weight he gave Dr. Shea's opinion by stating he gave it "little weight", and he explained the reason for not giving Dr. Shea's opinion controlling weight: it "does not note any objective findings which would support the alleged limitations." (R. 20). The ALJ noted that Dr. Shea's medical opinion was inconsistent with the opinions of the other examining physicians, and the weight of the medical evidence on record. Id. For example, Dr. Wiegman found that the plaintiff had a normal grip and arm strength, and Dr. Patton found that the plaintiff could walk in a stable and consistent manner. (R. 18-19, 514-515). The ALJ correctly considered the opinion of Dr. Shea in light of all the evidence on record and noted the inconsistencies between Dr. Shea's opinion and the opinions of other examining physicians.

Plaintiff's final challenge is that the ALJ failed to properly consider plaintiff's credibility when making his decision. (Dkt. # 21 at 9). Plaintiff argues that "[t]he ALJ's rejection of the claimant's allegations is not based on the evidence." Id. Plaintiff asserts that the ALJ improperly considered plaintiff's vacation in Grove as a sign that her occurrence of pain has been greatly overstated. Id. at 10. Plaintiff also alleges that her failure to testify that she took any medication prior to the hearing does not show any lack of credibility. Id. Rather, plaintiff argues that it was the failure of the ALJ in not asking thorough enough questions. Id. Plaintiff concludes that "[t]he ALJ's failure to consider the factors in section 404.1529(c)(3) and to link his finding with the evidence" constituted legal error. Id.

The ALJ is required to consider the impact that a plaintiff's pain, medication, treatment, and other factors has on the plaintiff's daily living. 20 C.F.R. § 404.1529(c)(3). Plaintiff cites

Hardman v.Barnhart, 362 F.3d 676, 679 (10th Cir. 2004) which the Tenth Circuit stated that the ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." Generally, the reviewing court will "treat credibility determinations made by an ALJ as binding upon review." Gosset v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1988). An ALJ, however must base his findings on substantial evidence, and not "just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). There must be a link between the ALJ's credibility determination and the evidence in the record. Id.

Here, the ALJ's finding concerning plaintiff's credibility was proper. The ALJ noted that plaintiff's "medically determinable impairments" can reasonably be construed to have caused her alleged aliments, but that, plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" compared to the plaintiff's residual functional capacity assessment. (R. 20). The ALJ found plaintiff's testimony about her pain, taking of medications, and lack of side effects of medication to be inconsistent because "[t]he pain experienced by the claimant is limiting but, when compared with the total evidence, it is not severe enough to preclude all types of work" which calls into question plaintiff's credibility. Id.

The ALJ also stated that plaintiff's decision to go vacation after the alleged onset date "tends to suggest that the alleged symptoms and limitations may have been overstated." Id. During this period plaintiff complained of disabling pain that prevented her from doing any work. Id. While vacationing does not necessarily mean that plaintiff was not disabled, activities such as "vacation may be considered, along with the other evidence, in determining whether a person is entitled to disabling benefits." Akin v. Sullivan, 1993 WL 379403, *4 (N.D. Okla. May

11

25, 1993). The ALJ properly considered plaintiffs vacation trip as a basis for calling her credibility into question.

Accordingly, the ALJ's decision that plaintiff was not disabled is supported by substantial evidence in the record and the correct legal standards were applied.

## **Conclusion**

Based on the foregoing, the Court **AFFIRMS** the decision of the Commissioner denying disability benefits to plaintiff.

**SO ORDERED** this day 31st of March, 2011.

_____
T. Lane Wilson
United States Magistrate Judge